UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RACHELE WILBURN,

    Plaintiff,

v.                                          Case No: 8:21-cv-2115-KKM-CPT

CHRISTOPHER NOCCO, as an
individual and in his official capacity
as Sheriff of Pasco County, and
SARAH WALKER,

    Defendants.
_____

## ORDER

Rachele Wilburn sued Deputy Sarah Walker and Sheriff Christopher Nocco after Walker arrested her for calling 9-1-1 and resisting an officer without violence. Wilburn alleges that the warrantless arrest violated the Fourth Amendment because Walker did not have probable cause. Nocco moves to dismiss Wilburn's claims against him in his official and individual capacities, arguing that she does not adequately allege supervisory or municipal liability for Walker's actions. The Court agrees and dismisses Counts II and III.

I.  BACKGROUND[1]

Rachele Wilburn and her husband lived in Pasco County in 2017 and 2018. During that time, the Pasco County Sheriff's Office (PCSO) used the Intelligence-Led Policing Program (ILPP). (Doc. 1 ¶¶ 42–43.) The ILPP is an official PCSO policy that targets individuals and families that PCSO deems "likely to commit crimes." (*Id.* ¶ 39–40.) Under the ILPP, PCSO deputies make frequent and unannounced visits to the homes of targeted persons. (*Id.* ¶¶ 15, 41, 43.) While on the premises, deputies "demand entrance to the home or information" on the targeted person. (*Id.* ¶ 41.) If asked to leave, they refuse to do so. (*Id.* ¶ 41.) They also write tickets for offenses such as "missing mailbox numbers and overgrown grass." (*Id.* ¶ 39.) Sheriff Nocco proposed, implemented, and oversaw the policy. (*Id.* ¶¶ 39, 74.)

During 2017 and 2018, PCSO targeted Wilburn and her husband under the ILPP. (*Id.* ¶ 43.) PCSO subjected them to "multiple ordinance checks," frequent monitoring, and at least one threat of arrest. (*Id.* ¶¶ 11, 15, 43–44.)

On September 2, 2017, Deputy Walker and another PCSO deputy arrived at Wilburn's home. (*Id.* ¶¶ 10–12.) This was "at least the fourth time that [d]eputies had been on their property in recent months for alleged ordinance checks." (*Id.* ¶ 15.) This time, the deputies claimed they needed to investigate whether Wilburn's recreational race

---

[1] The Court treats the factual allegations in Wilburn's Complaint as true and construes them in the light most favorable to her. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

vehicles violated an ordinance on vehicle tags. (*Id.* ¶¶ 11, 13–14.) Wilburn told the deputies that a code inspector determined just days earlier that the vehicles complied with the ordinance. (*Id.* ¶ 14.) Wilburn also asked the deputies to leave. (*Id.* ¶ 18.) They refused. (*Id.* ¶ 19.) Wilburn's husband then threatened that he would call the deputies' supervisor, and Walker responded "go ahead and call 9-1-1." (*Id.* ¶¶ 20–21.) So Wilburn did. She dialed 9-1-1 "to report a trespass on her property." (*Id.* ¶ 22.)

While Wilburn was speaking with the 9-1-1 operator, Walker arrested her for misuse of 9-1-1 under a Florida statute that makes it a crime to call 9-1-1 for a false alarm or to report false information. (*Id.* ¶ 23, 38); *see* § 365.172(14), Fla. Stat. Wilburn resisted when Walker tried to handcuff her, so Walker kicked her. (Doc. 1 ¶¶ 24–25.) Following the scuffle, PCSO transported Wilburn to the Land O' Lakes jail for misuse of 9-1-1 and for opposing a lawful arrest. (*Id.* ¶ 26.) She was released the next day after she posted bond. (*Id.* ¶ 31.)

PCSO's targeting did not end with Wilburn's arrest on September 2, 2017. Later that same day, additional deputies arrived at Wilburn's home. (*Id.* ¶ 27.) After consulting a statute book, the deputies told Wilburn's husband that the mailbox violated an ordinance because the numbers were not properly displayed. (*Id.* ¶ 28.) A few days later, a PCSO deputy drove slowly by the home and informed Wilburn's husband through the cruiser's window that "we can put you in the back, just like your wife." (*Id.* ¶ 44.) And on October

3

26, 2017, PCSO's deputies again inspected Wilburn's property for ordinance violations. (*Id.* ¶ 34.) This time they cited Wilburn for "open burning" based on "a pile of burnt wood in the back yard." (*Id.*)

The State Attorney's Office voluntarily dismissed the charges upon which Walker was arrested, as well as the mailbox and open burning ordinance violations. (*Id.* ¶¶ 35–37.) Wilburn no longer lives in Pasco County. (*Id.* ¶ 5.)

On September 2, 2021, Wilburn sued Walker and Nocco. Her Complaint brings three Counts. Count I alleges that Walker violated the Fourth Amendment by arresting Wilburn without a warrant or probable cause. (*Id.* ¶ 48–49.) Count II alleges that Nocco is liable in his official capacity as Sheriff for Walker unlawfully arresting Wilburn. (*Id.* ¶¶ 62–64.) Count III alleges that Nocco is liable in his individual capacity for Walker's acts because he was her supervisor. (*Id.* ¶¶ 72–75.) Walker filed an answer to Count I, (Doc. 12), but Nocco moves to dismiss Counts II and III, (Doc. 13). Wilburn responds in opposition. (Doc. 23.)

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

4

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III. ANALYSIS

Section 1983 allows a plaintiff to sue officials acting under color of state law for violating federal rights. *See* 42 U.S.C. § 1983. Section 1983 does not itself create rights. Instead, it provides a remedy for a state actor's violations of federal rights that are created by the Constitution or a federal statute. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Wilburn's Complaint displays some confusion on these principles, (Doc. 1 at 1 (alleging "violations of 42 U.S.C.

§ 1983"), but can fairly be read to allege a Fourth Amendment violation (as incorporated through the Fourteenth Amendment against the States) based on Wilburn's warrantless arrest through § 1983. Section 1983 allows her to enforce her right under the Fourth Amendment to be free from arrests without probable cause by suing Walker and Nocco.

Nocco does not argue that Walker had probable cause to arrest Wilburn or otherwise argue that Wilburn's Fourth Amendment claim fails on the merits. Instead, Nocco moves to dismiss Counts II and III because the Complaint does not sufficiently allege supervisory or municipal liability for Walker's acts under § 1983. Accordingly, the Court assumes for purposes of this motion that the arrest violated the Fourth Amendment. The sole issue is whether Nocco is liable—either individually or officially—for Walker's decision to arrest Wilburn without a warrant and without probable cause.

## A. Section 1983 Liability in Nocco's Official Capacity

Wilburn's claim against Nocco in his official capacity as Sheriff of Pasco County is, "in all respects other than name, to be treated as a suit against [PCSO]." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a municipal entity, PCSO "cannot be held vicariously liable under § 1983 for constitutional violations committed by its officers." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). Instead, a municipality is liable for deprivations of rights that arise from an official policy that is unconstitutional or an established custom of unconstitutional acts. *Craig v. Floyd Cnty.*, 643 F.3d 1306,

6

1310–11 (11th Cir. 2011); *accord Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991). Accordingly, to hold Nocco liable in his official capacity as Sheriff, Wilburn must allege a policy or custom that is sufficient to hold PCSO liable under § 1983.

A custom supports municipal liability if it is "a longstanding and widespread practice," *Brown*, 923 F.2d at 1481, or one that is "so persistent and widespread as to practically have the force of law," *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A single incident is not a custom. *See Craig*, 643 F.3d at 1310.

Nocco argues that Wilburn fails to allege a custom because the Complaint focuses on Wilburn's arrest and does not allege a pattern of similar acts. Rather than contest the point, Wilburn concedes that she did not utilize that theory of liability. (Doc. 23 at 10–11.) The Court agrees. The Complaint focuses on "a single incident of alleged unconstitutional activity"—Walker's decision to arrest Wilburn. *Craig*, 643 F.3d at 1311. It does not allege that Wilburn was arrested without probable cause on multiple occasions or that PCSO arrested anyone else without probable cause on prior occasions giving rise to a persistent and widespread practice. Accordingly, Wilburn cannot allege an unconstitutional custom.

Even without a custom or widespread practice, a plaintiff may impose liability on a municipality if it or its final policymaker adopts a "policy that in and of itself violate[s]"

7

constitutional rights. *Tuttle*, 471 U.S. at 822. A single application of such an official policy suffices to hold a municipality liable. *Id.*

Wilburn does not adequately allege that the ILPP itself is unconstitutional. According to the Complaint, the ILPP targets individuals that PCSO deems likely to commit crimes in the future. It seeks to "make their lives miserable until they move." (Doc. 1 ¶ 39.) It requires that deputies make frequent unannounced inspections at the targets' homes to check for compliance with laws and ordinances. And, under this policy, deputies often cite targets for ordinance violations such as "missing mailbox numbers and overgrown grass," (*Id.* ¶ 39), and State Attorneys later dismiss the charges.

While Wilburn gives considerable detail about the policy, she never alleges it directed deputies to arrest targets without probable cause in violation of the Fourth Amendment. Nor does Wilburn allege that such arrests were common. Or even that a single other such arrest had occurred. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1329 (11th Cir. 2015) (affirming dismissal of a § 1983 claim premised on a single incident that contained only conclusory allegations of similar violations). In other words, Wilburn does not allege that Walker violated her Fourth Amendment rights "pursuant to official municipal policy." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Wilburn disagrees, claiming that the Complaint explicitly links Walker's arrest to the ILPP. Wilburn points to a paragraph in the Complaint that, after summarizing the arrest, says that "[a]t all times hereto, Walker was . . . following an official policy promulgated, implemented, and overseen by Sheriff." (Doc. 1 ¶ 62.) While Wilburn is correct that this assertion connects the arrest to the policy, it is insufficient because it is not a legitimate factual allegation making it plausible that the ILPP caused the arrest here. Instead, it is a "[t]hreadbare recital[] of the elements" of municipal liability without any factual enhancement. *Iqbal*, 556 U.S. at 678. Courts must disregard such allegations. *Id.* Without this statement Count II lacks the required "affirmative link between the policy and the particular constitutional violation alleged." *Tuttle*, 471 U.S. at 823. Accordingly, the Court dismisses Count II against Nocco in his official capacity.

### B. Section 1983 Liability in Nocco's Individual Capacity

"The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Braddy v. Fla. Dep't of Lab. & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). A supervisor who did not "personally participate[]" in a subordinate's unconstitutional conduct is liable if there is a "causal connection" between the supervisor's and the subordinate's acts. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). A causal connection exists when a "supervisor's 'custom or policy . . . result[s]

9

in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully.'" *Id.* (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1234–35(11th Cir. 2003)).

Wilburn does not satisfy this rigorous standard. The Complaint alleges that Nocco created and oversaw the ILPP to target individuals that PCSO thought would commit crimes. But Nocco is liable for Walker's decision to arrest Wilburn only if the ILPP caused Walker's behavior.

As with Count II, Wilburn argues that she has sufficiently alleged a causal connection between the ILPP and Wilburn's arrest because the Complaint says so. For example, the Complaint asserts that Nocco's policy "resulted in deliberate indifference towards fundamental [c]onstitutional rights" and that "there was a causal connection between Nocco's . . . policy and [Wilburn's] arrest." (Doc. 1 ¶¶ 73–74.) Similarly, the Complaint claims that the "policy was designed to implement and encourage the conduct engaged in by Defendant Walker." (*Id.* ¶ 74.) These fact-bare assertions and legal conclusions "do not suffice" to "allow[] the [C]ourt to draw the reasonable inference that [Nocco] is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (explaining that a plaintiff must be armed with more than conclusions); *cf. Gonzalez*, 325 F.3d at 1235 ("Plaintiffs state that there is a causal connection between these defendants' acts and the

10

excessive force used by the agents on the scene, but they do not allege any facts to support this causal connection.").

Without these assertions, Count III fails to allege a sufficient causal connection between Nocco's ILPP and Wilburn's arrest for much the same reasons as Count II. Simply put, the Complaint does not allege that Nocco directed Walker to arrest Wilburn without probable cause or that the ILPP directed PCSO deputies to arrest targeted persons without probable cause.

Wilburn points out that a supervisor who is deliberately indifferent to the unconstitutional acts that result from his policy may be held individually liable. True enough. But deliberate indifference is a "stringent standard of fault" that requires allegations "that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quotation omitted). The supervisor must retain the policy despite "actual or constructive notice" that it causes his subordinates to violate constitutional rights. *Id.* "A pattern of similar constitutional violations" is usually necessary. *See id.* at 62. A sufficient pattern is "flagrant" and "persistent," or "rampant and of continued duration," or a "widespread abuse." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007) (quotations omitted). "A less stringent standard of fault for a [§ 1983] claim 'would result in de facto respondeat superior liability on [supervisors].'" *Connick*, 563 U.S. at 62 (emphasis omitted) (quotation omitted).

Wilburn has not adequately alleged that Nocco was deliberately indifferent to constitutional violations. As explained above, Wilburn has not alleged that the ILPP required or encouraged deputies to arrest targets without probable cause. Nor has Wilburn alleged that the ILPP had the practical effect of more arrests without sufficient cause. And even if those arrests occurred, Wilburn has not alleged that Nocco was aware of them and failed to correct it. *See Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) (highlighting that a sheriff knew of mistakes and failed to redress them).

Instead, the Complaint alleges that a member of the United States House of Representatives asked Florida's Governor to fire Nocco because the policy "violates the [c]onstitutional rights of Florida citizens." (Doc. 1 ¶ 42 (citing an article from the Associated Press).) But the Complaint does not specify that the member's comments concerned arrests without probable cause or even the Fourth Amendment generally. Even if they did, the member's statements could not have put Nocco on notice that Walker might arrest Wilburn without probable cause because the statements came more than three years after Wilburn was arrested. (*Id.* at 8 n.2.)

Without allegations that Nocco directed deputies to arrest targets without probable cause or knew that they were doing so and ignored that practice, the Complaint does not support a causal connection between Nocco's actions and any unconstitutional arrests. Accordingly, the Court dismisses Count III against Nocco in his individual capacity.

## IV. CONCLUSION

The Court dismisses Counts II and III because Wilburn's Complaint does not adequately allege that Nocco is liable under § 1983 in his individual or official capacity for Walker's decision to arrest Wilburn on September 2, 2017. Accordingly, Defendant's Motion to Dismiss (Doc. 13) is **GRANTED**. The Court dismisses Counts II and III.

**ORDERED** in Tampa, Florida, on May 16, 2022.

Kathryn Kimball Mizelle
United States District Judge